UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELLEN SKUSE POWERS O/B/O
N.W.T.,

                   Plaintiff         DECISION AND ORDER

-vs-

                                   15-CV-6510 CJS

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                   Defendant.
_____

APPEARANCES

For the Plaintiff:           Timothy Hiller
                                Law Offices of Kenneth Hiller
                                6000 N. Bailey Avenue, Suite 1A
                                Amherst, New York 14226

For the Defendant:       Tomasina DiGrigoli
                                Social Security Administration
                                Office of General Counsel
                                26 Federal Plaza, Room 3904
                                New York, New York 10278

                                Kathryn L. Smith
                                Office of the United States Attorney
                                for the Western District of New York
                                100 State Street
                                Rochester, New York 14614

INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Ellen Skuse Powers ("Plaintiff") for Supplemental Security Income ("SSI") disability benefits on behalf of her minor child, N.W.T., who is

1

diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). Now before the Court is Plaintiff's motion (Docket No. [#9]) for judgment on the pleadings and Defendant's cross-motion [#11] for judgment on the pleadings. Plaintiff's application is granted, Defendant's application is denied, and the matter is remanded for a new hearing.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

In determining whether a child is entitled to SSI benefits pursuant to 20 C.F.R. § 416.924,

> [t]he Commissioner follows a three-step sequential evaluation process to determine whether [the] child is disabled. At step one, if [the] child is performing substantial gainful activity, the claim is denied. If not, the Commissioner considers whether the child's impairment is non-severe, a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." If the child's impairment is not severe, the claim is denied.
>
> If the impairment is severe, then the Commissioner considers whether the child has an impairment or a collection of impairments that "meet, medically equal, or functionally equal" any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings").

*Arsenault v. Colvin*, No. 13–cv–6589 (SAS), 2015 WL 631403 at *6 (S.D.N.Y. Feb. 13, 2015) (citations and footnotes omitted).

The pertinent "listing" in this action is Listing 112.11, "Attention Deficit Hyperactivity Disorder," which states as follows:

> **Attention Deficit Hyperactivity Disorder**: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of all three of the following: 1. Marked inattention; and 2. Marked impulsiveness; and 3. Marked hyperactivity;
>
> AND
>
> B. ... [F]or children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. The aforementioned criteria in paragraph B2 of § 112.02 are as follows:

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
>
> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

>c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
>
>d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Accordingly, to "meet" Listing 112.11, a claimant must satisfy these requirements.

However, as noted above, a claimant may also be found disabled at the third step of the sequential analysis if his impairment "medically equals" a listed impairment. The regulations provide three ways in which an impairment or combination of impairments can "medically equal" a listed impairment, but the only one which appears to arguably apply here is found at 20 C.F.R. § 416.926(b)(1), which states in pertinent part:

>If you have an impairment that is described in the Listing of Impairments in Appendix 1 of subpart P of Part 404 of this chapter but – (A) You do not exhibit one or more of the findings specified in the particular listing, or (B) You exhibit all the findings, but one or more of the findings is not as severe as specified in the particular listing, we will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

20 C.F.R. § 416.926(b)(1).

Lastly, at the final stage of the third step of the sequential analysis, if the claimant cannot demonstrate that the impairment or combination of impairments meets of medically equals a listed impairment, he may still be found disabled if he can show

that the impairment or combination of impairments "functionally equals" a listed impairment:

> If the medical findings do not meet or medically equal the criteria contained in the Listings, the Commissioner reviews the evidence to determine how the child's impairments affect h[is] functioning in several broad areas, known as domains. These domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating to others; (iv) moving and manipulating objects; (v) caring for one's self; and (vi) health and physical well-being. The regulations provide for each age category, and establish a different standard for each age group.
>
> The Commissioner determines within each domain whether the degree of the child's limitation is "marked" or "extreme." A child is considered disabled if [he] has an extreme limitation in one domain or a marked limitation in two domains. A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."

*Arsenault v. Colvin*, 2015 WL 631403 at *6 (citations and footnotes omitted); *see also*, 20 CFR § 416.924.

## BACKGROUND

At the administrative hearing in the instant case, the ALJ conducted the requisite three-step sequential analysis and found, at steps one and two, respectively, that the child was not performing substantial gainful activity and had a severe impairment consisting of "attention deficit hyperactivity disorder (ADHD), predominantly hyperactive impulsive type." (14). The ALJ also found that the child had certain non-severe impairments. At step three of the analysis, the ALJ found, first, that the child did not

have an impairment or combination of impairments that met-or-medically-equaled a listed impairment. The ALJ's complete discussion of that point is as follows:

> The record fails to establish that the claimant has an impairment or combination of impairments that meets or medically equals the criteria of any listed impairment. The medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment. No treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment.
>
> Specific consideration has been given to the applicable sections of 112.00 Mental Disorders - Childhood, including listing 112.11, of the listed impairments.

(15). Although the record contains various reports from doctors, psychologists, therapists, family members and school staff concerning N.W.T's ADHD, the ALJ's discussion, of whether N.W.T's impairment meets or medically equals a listed impairment, did not mention any of that evidence.

The ALJ then proceeded to find that the child's impairments did not functionally equal a listed impairment. (15-23). In doing so, the ALJ indicated that he had considered, among other evidence, a report by N.W.T.'s treating therapist, Carol Dauvergne, LCSW ("Dauvergne"), and had given most of the report "significant weight." Specifically, the ALJ stated:

> Treating therapist Carol Dauvergne, LCSW provided an opinion regarding the claimant's functioning (Exhibit 9F). Although she initially noted marked limitations in several areas, she went on to specify that the claimant has no problems in acquiring and using information, an obvious or serious problem attending [to] and completing tasks, a slight to obvious

problem interacting and relating with others, no problem moving about and manipulating objects, an obvious problem caring for himself, and some issues with health and physical well being.  This opinion is given significant weight a[s] that of a treating source directly familiar with the claimant's functioning.  However, Ms. Dauvergne's assessment of the domains of caring for himself and health and physical well being are somewhat inconsistent with the remainder of the objective record.

(17).  The ALJ concluded that N.W.T.'s impairment did not functionally equal a listed impairment. Because of that, and because he had already found that N.W.T.'s impairment did not meet or medically equal a listed impairment, the ALJ ruled that N.W.T. was not disabled.  The ALJ's Decision is now the Commissioner's final decision.

In challenging the Commissioner's determination, Plaintiff limits her argument to a single issue:

> Is remand required because the ALJ failed to explain why N.W.T. did not meet or equal Listing 112.11 despite the fact that N.W.T.'s treating therapist [Dauvergne] opined that all of the criteria of Listing 112.11 were met?"[1]

On this point, Plaintiff is referring to the fact that Dauvergne's report indicates, *inter alia*, that N.W.T. had marked inattention, marked impulsiveness, marked hyperactivity, marked-or-more-severe impairment in age-appropriate cognitive/communicative function, marked-or-more-severe impairment in age-appropriate social functioning, and marked-or-more- severe impairment in age-appropriate personal functioning (322-323), all of which, if accepted as true, would establish that N.W.T. meets listing 112.11 for

---

[1] From this, and from the other arguments in Plaintiff's memorandums of law, the Court understands Plaintiff's question to refer to whether the ALJ properly explained why N.W.T. did not meet or *medically* equal the listing. *See also*, Pl. Memo of Law [#9-1] at p. 28 (Indicating in Plaintiff's concluding argument that Dauvergne's opinion establishes that N.W.T.'s ADHD "met" Listing 112.11).  Accordingly, the Court focuses its attention on that aspect of the ALJ's decision, rather than on his discussion of whether N.W.T.'s condition *functionally* equaled the listing.

ADHD.

## DISCUSSION

Plaintiff contends that the matter must be remanded for further administrative proceedings because the ALJ failed to adequately explain his determination that N.W.T. fails to meet or medically equal Listing 112.11. Plaintiff argues that the evidence of record, and especially Dauvergne's report, established *prima facie* that N.W.T's impairment meets or medically equals Listing 112.11, and that pursuant to *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982)[2] ("*Berry*"), the ALJ was therefore required to provide an "express rationale" for his determination that the impairment did not meet or medically equal the listing, rather than replying upon a boilerplate statement devoid of any particular facts. Plaintiff further contends that the ALJ was required to consider Dauvergne's report on this point, even though Dauvergne is a Licensed Clinical Social Worker, which is not considered an "acceptable medical source" ("AMS"). Additionally, Plaintiff maintains that the ALJ's failure to mention Dauvergne's report as part of his discussion as to whether N.W.T.'s impairment met or medically equaled Listing 112.11 suggests that the ALJ may not have realized that the report

---

[2]Generally, *Berry* held that an ALJ's failure to explain his finding at Step Three of the Five-Step Sequential Analysis governing disability claims for adults, did not require remand because clear and undisputed evidence of record and other parts of the ALJ's Decision suggested reasons for the finding. *See, Berry*, 675 F.2d at 468 ("[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."). The Circuit Panel in *Berry*, though, cautioned the Commissioner that future decisions "should set forth a sufficient rationale" in such cases. *See, Id.* at 469 ("[I]n spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence. Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision. ").

contained findings that if accepted would have established that the listing was met.

The Commissioner opposes Plaintiff's application, and points out that much of the evidence of record suggests that while N.W.T. was hyperactive, distractible, bossy and poorly behaved at times, the child's ADHD symptoms were generally well-controlled by medication, which allowed the child to generally perform well in school. The Commissioner also contends that the medical evidence fails to establish that N.W.T.'s impairment meets Listing 112.11.  Although, most if not all of the Commissioner's discussion on these points amounts to a *post hoc* rationalization for the ALJ's decision, since the ALJ himself did not cite the same evidence or, indeed, any evidence, when finding that N.W.T.'s impairment did not meet or medically equal Listing 112.11.  With regard to Dauvergne's report, the Commissioner classifies it as a "non medical opinion," but nevertheless insists that the ALJ properly considered it when finding that Listing 112.11 was not satisfied:

> NWT points to Ms. Dauvergne's non-medical opinion that he met all of the requirements for Listing 112.11 to argue that the ALJ should have found that NWT met or equaled Listing 112.11.  However, the ALJ considered Ms. Dauvergne's opinion noting that she [indicated] several areas where NWT had marked limitations.  The ALJ then noted that this portion of Ms. Dauvergne's opinion was inconsistent with the rest of her opinion that NWT had no problems acquiring and using information, less than serious problems interacting with others, and less than serious problems caring for himself.  In doing so, the ALJ properly gave this portion of her opinion less weight.

Def. Memo of Law [#11-1] at p. 19 (citations omitted). The Commissioner further points out that since Dauvergne is not an acceptable medical source, her opinion could not be given "controlling weight," though the Commissioner stops short of arguing that

Dauvergne's report is irrelevant to the determination of whether N.W.T.'s impairment meets or medically equals the listing.  Finally, the Commissioner contends that Dauvergne's report is inconsistent with the other evidence of record, though, again, that is not a reason that the ALJ mentioned in his decision.  Rather, the ALJ found that Dauvergne's report was generally entitled to "significant weight."

The Court agrees with Plaintiff that the matter must be remanded.  As a preliminary matter, the Commissioner's brief [#11-1] incorrectly suggests that the ALJ's decision referenced Dauvergne's report when deciding whether the listing was met or medically equaled, and that in doing so, the ALJ gave "less weight" to the portions of Dauvergne's opinion that found "marked limitations" in several areas.  Rather, the ALJ did not mention Dauvergne's report at all with regard to meeting or medically equaling the listing, and he otherwise gave "significant weight" to Dauvergne's report with only one exception:  He found that Dauvergne's "assessments of the domains of caring for himself and health and physical wellbeing [were] somewhat inconsistent with the remainder of the objective record." (17).  The ALJ's comment about those two "domains" pertained only to "functional equivalence," not to whether N.W.T.'s impairment meets or equals Listing 112.11.

Additionally, the ALJ was incorrect in stating that, "No treating, examining, or non-examining *medical source* has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment."  On this point, the Social Security Administration uses the term "medical sources" to "refer[ ] to both 'acceptable medical sources' and other health care providers who are not 'acceptable medical sources.'" SSR 06-03p.  "Acceptable medical

sources" ("AMS") include licensed physicians and psychologists, while "other medical sources" include nurse practitioners, physician assistants and licensed clinical social workers. *Id*. Dauvergne is a Licensed Clinical Social Worker and therapist, and therefore meets the definition of a "medical source," though not an "acceptable medical source." Further, Dauvergne's report indicates that N.W.T. meets, and in fact exceeds, all of the requirements for Listing 112.11. (322-323). The ALJ was therefore incorrect in stating that "no medical source" had mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of a listed impairment. As Plaintiff contends, such error suggests that the ALJ may not have fully appreciated the contents of Dauvergne's entire report, which actually consists of two separate forms.[3] (322-232 Listing 112.11 criteria; 324-331 functional equivalence).

The Court also agrees with Plaintiff that the ALJ failed to provide a sufficient explanation for why Listing 112.11 was not met or medically equaled in this case. For example, the Court cannot tell what specific evidence the ALJ may have considered in making his determination on that point. At most, the ALJ's boilerplate statement on this point suggests that he only considered "medical evidence" from "medical sources." (15). It is unclear to the Court whether the ALJ's reference to "medical source[s]" in this regard was intended to refer to "acceptable medical sources," meaning that he only considered evidence from acceptable medical sources. If so, that might provide an alternate explanation for why the ALJ did not mention Dauvergne's report in that portion of the Decision. In any event, insofar as the ALJ may have understood that he could

---

[3]The ALJ's decision suggests that he saw and considered at least the first page of Dauvergne's report concerning Listing 112.11.

only consider "medical evidence," at least with regard to medical equivalence, he may have been relying upon an outdated version of 20 C.F.R. § 416.926(c). *See*, 20 C.F.R. § 416.926(c) ("What evidence do we consider when we determine if your impairment(s) medically equals a listing?  When we determine if your impairment medically equals a listing, we consider *all evidence* in your case record about your impairment(s) and its effects on you that is relevant to this finding.  We do not consider your vocational factors of age, education, and work experience[.]") (emphasis added); *see also, B.C. v. Astrue*, No. 08 C 6026, 2011 WL 1547054, at *4 (N.D. Ill. Apr. 22, 2011) ("*Compare* 20 C.F.R. § 416.926(b) (2000) ("Medical equivalence must be based on medical findings.") with 20 C.F.R. § 416.926(c) (2010) ("When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) ...")).

      The ALJ's lack of detail is also problematic because the listings, including Listing 112.11, repeatedly use the terms "medically documented findings" and "documented by medical findings" without defining those terms, making it unclear of what such findings consist, and who can make them.  Generally, though, only "acceptable medical sources" can provide evidence to establish the "*existence* of a medically determinable impairment ["(MDI)"]," but "other medical sources" and non-medical sources can provide evidence "to show the *severity* of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p (emphasis added).  In fact, once the existence of an impairment has been established at the first stage of step two of the sequential analysis, the Commissioner considers "all evidence" at all of the remaining steps of the sequential analysis:

> Once we establish that an individual has an MDI based on evidence from an AMS, we use *all evidence from all sources for all other findings in the sequential evaluation process, including showing the severity of an individual's MDI at step 2.* These non-AMS sources include:
>
> > a. Medical sources who are not AMSs but who are legally permitted to provide health care, such as nurse practitioners, physician assistants, naturopaths, chiropractors, audiologists, and *therapists*;
> >
> > b. Other sources, such as
> >
> > > ○ educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
> > >
> > > ○ public and private social welfare agency personnel; and
> > >
> > > ○ relatives (spouses, parents, siblings, etc.), caregivers, friends, neighbors, past employers, and clergy.

Social Security Administration Program Operations Manual System (POMS), DI 22505.003 "Evidence from an Acceptable Medical Source."[4] (emphasis added). Here, it is unclear how the ALJ interpreted the "medical findings" requirement in Listing 112.11, since he did not indicate what evidence he considered.

For all of the foregoing reasons the Court finds that remand is necessary. *See, Rogers v. Colvin*, No. 15CIV3921CSPED, 2016 WL 4626572, at *6 (S.D.N.Y. Sept. 6, 2016) ("[W]hen the ALJ's rationale is unclear in light of the record evidence, remand to the Commissioner for further development of the evidence or for an explanation of the

---

[4] https://secure.ssa.gov/poms.nsf/lnx/0422505003

ALJ's reasoning is warranted.") (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

## CONCLUSION

Plaintiff's application [#9] is granted, defendant's application [#11] is denied, and this matter is remanded to the Commissioner for further administrative proceedings, pursuant to 42 U.S.C. § 405(g), sentence four.  The Clerk of the Court is directed to close this action.

So Ordered.

Dated: Rochester, New York
         October 3,  2016

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge